**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No.:  23-306 (RC) |
| | : | |
| TONEY SHELDON BRAY and | : | |
| ETHAN AARON BRAY, | : | Re Document Nos.:    32, 37, 39, 40, 41 |
| | : | |
| Defendants. | : | |

<u>**MEMORANDUM OPINION**</u>

**DENYING DEFENDANTS' JOINT MOTION TO DISMISS COUNT ONE; GRANTING IN PART AND
DENYING IN PART DEFENDANTS' JOINT MOTION IN LIMINE; GRANTING IN PART AND
DENYING IN PART GOVERNMENT'S MOTIONS IN LIMINE**

## I. INTRODUCTION

Defendants Toney Sheldon Bray and Ethan Aaron Bray are charged in a multi-count

felony indictment arising out of their alleged participation in the events at the Capitol on January

6, 2021.  The Government charges both Defendants with (Count 1) civil disorder in violation of

18 U.S.C. § 231(a)(3); (Count 3) entering and remaining in a restricted building or grounds in

violation of 18 U.S.C. § 1752(a)(1); (Count 4) disorderly and disruptive conduct in a restricted

building or grounds in violation of 18 U.S.C. § 1752(a)(2); (Count 5) disorderly conduct in a

Capitol building in violation of 40 U.S.C. § 5104(e)(2)(D); and (Count 6) parading,

demonstrating, or picketing in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(G).  *See*

*generally* Indictment, ECF No. 16.  The indictment also charges Defendant Toney Sheldon Bray

with (Count 2) theft of government property in violation of 18 U.S.C. § 641.  *Id.* at 2.

Defendants move to dismiss Count 1 of the indictment on various constitutional grounds, *see*

Defs.' Mot. Dismiss, ECF No. 32, which the Government opposes, *see* Gov't's Opp'n Defs.'

Mot. Dismiss, ECF No. 36.  Defendants also move in limine to cabin the Government's use of

terms such as "rioters," "insurrectionists," "attackers," and "part of a mob," which they consider inflammatory.  *See* Defs.' Mot. Limine, ECF No. 37.  The Government also moves in limine to restrict presentation of evidence about the position of U.S. Capitol Police ("USCP") surveillance cameras, ECF No. 39, to preclude admission of certain evidence and arguments related to actions of law enforcement, ECF No. 40, and to limit cross-examination of witnesses from the United States Secret Service ("USSS"), ECF No. 41.  For the reasons stated below, the Court denies Defendants' motion to dismiss Count One.  The Court additionally grants in part and denies in part Defendants' motion in limine and grants in part and denies in part the Government's motions in limine.

## II.  FACTUAL BACKGROUND

At approximately 1:00 p.m. on January 6, 2021, Congress convened to count the votes of the Electoral College and certify the results of the 2020 presidential election.  Vice President Mike Pence was present to preside over the session in his role as President of the Senate.  About an hour later, at approximately 2:00 p.m., the crowd that had gathered outside the Capitol building began to force its way inside and broke out into a riot.  The Government alleges that Defendants, who reside in Mississippi, were arrested the night before the riot for curfew violations, during which police identified them and captured body-worn camera footage of their attire and belongings, including gas masks.  Gov't's Statement of Facts at 4–7, ECF No. 1-1.  On the day of the riot, the Government alleges, Defendants wore the same attire when they toppled police barricades and entered restricted areas on the Capitol grounds.  *Id.* at 8–11.  Defendants "were among the first to confront law enforcement on the staircase under scaffolding leading from the West Plaza to the Lower West Terrace," and they "entered the U.S. Capitol Building at approximately 2:22 p.m.," according to the Government.  *Id.* at 14.  Capitol security cameras

allegedly captured them in various locations throughout the building, and they allegedly exited the building at 2:54 p.m. *Id.* at 14–17. The Government additionally contends that photographic and video evidence shows Defendant Toney Sheldon Bray carrying a USCP riot shield, and that he retained the shield after exiting the Capitol building. *Id.* at 17–18. The Government filed a criminal complaint against Defendants on January 10, 2023, ECF No. 1, and a grand jury returned an indictment that was filed on September 6, 2023, *see* Indictment.

## III. LEGAL STANDARD

### A. Motions to Dismiss

Before trial, a criminal defendant may move to dismiss a count of the indictment based on a "defect in the indictment." Fed. R. Crim. P. 12(b)(3)(B). Defects can include "lack of specificity" and "failure to state an offense." *Id.* A "failure to state an offense" argument includes constitutional challenges to the statute creating the charged offenses. *See United States v. Stone*, 394 F. Supp. 3d 1, 8 (D.D.C. 2019); *United States v. Seuss*, 474 F.2d 385, 387 n.2 (1st Cir. 1973). When considering a challenge to the indictment, "a district court is limited to reviewing the face of the indictment;" the court must "presume the allegations [in the] indictment to be true." *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (internal quotation marks omitted). "The operative question is whether [those] allegations, if proven, would be sufficient to permit [the finder of fact] to find that the crimes charged were committed." *United States v. Sanford, Ltd.*, 859 F. Supp. 2d 102, 107 (D.D.C. 2012).

### B. Motions in Limine

"While neither the Federal Rules of Civil Procedure nor the Federal Rules of [E]vidence expressly provide for motions in limine, the Court may allow such motions pursuant to the district court's inherent authority to manage the course of trials." *Barnes v. Dist. of Columbia*,

924 F. Supp. 2d 74, 78 (D.D.C. 2013) (internal quotation marks omitted).  "Consistent with the historical origins of the practice, motions in limine are designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions."  *Graves v. Dist. of Columbia*, 850 F. Supp. 2d 6, 10 (D.D.C. 2011) (internal quotation marks omitted).  Advance rulings are generally unnecessary, however, in the context of a bench trial.  *See United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009).  In particular, "the Rule 403 balancing test 'concerning unfair prejudice has a highly limited application, if any at all' in a bench trial."  *United States v. Fitzsimons*, 605 F. Supp. 3d 92, 100 n.6 (D.D.C. 2022) (quoting *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, No. 11-cv-1623, 2015 WL 13680822, at *1 (D.D.C. June 12, 2015)).

## IV.  ANALYSIS

The Court first examines Defendants' motion to dismiss Count One of the indictment on various grounds before considering the motions in limine.

### A.  Motion to Dismiss Count One

Count One of the indictment charges both Defendants with civil disorder in violation of 18 U.S.C. § 231(a)(3).  Indictment at 1–2.  That paragraph of the statute penalizes

> Whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function.

18 U.S.C. § 231(a)(3).  Defendants challenge the statute's applicability on four separate axes, all of which courts in this district have addressed before, including that (1) the statute is void for vagueness in violation of the Fifth Amendment; (2) the statute exceeds Congress's legislative powers under the Interstate Commerce Clause; (3) that the statute is facially overbroad and

represents a content-based prohibition in violation of the First Amendment; and (4) that the language in the indictment is insufficient in violation of the Fifth Amendment. *See generally* Defs.' Mot. Dismiss. The Court addresses each of these issues in turn and concludes that none of these challenges succeed.

## 1. Vagueness

Defendants argue that the language of § 231(a)(3) is too imprecise and encourages arbitrary and discriminatory enforcement. Mot. Dismiss at 4–8. According to Defendants, the phrases "any act," "to obstruct, impede, or interfere," "incident to and during the commission of a civil disorder," and "in any way obstructs, delays, or adversely affects commerce" all "fail to provide a person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Id.* at 5 (quoting 18 U.S.C. § 231(a)(3)). In addition, Defendants argue, the statute lacks an express mens rea requirement and relies on the subjective reactions of others. *Id.* a 6–7. The Government responds that the statute is not unconstitutionally vague because a person of reasonable intelligence would understand the nature of the prohibited conduct, Defendants' alleged conduct falls within the ambit of the statute, and the statute requires an individual to act with intent. Gov't's Opp'n Mot. Dismiss at 5–11.

The "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). "[W]hen the vagueness doctrine assesses a legal term's meaning to 'ordinary people,' it is assessing meaning with the elementary rule of statutory interpretation: Words receive their 'plain, obvious and common sense' meaning, 'unless context furnishes some ground to control, qualify, or enlarge it.'" *United States v. Bronstein*, 849 F.3d 1101, 1108 (D.C. Cir. 2017)

(citation omitted).  Criminal statutes do not provide fair notice when they tie culpability to "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *United States v. Williams*, 553 U.S. 285, 306 (2008).  But fair notice is not implicated by the possibility that "it will sometimes be difficult to determine whether the incriminating fact [the statute] establishes has been proved." *Id.*  In addition, there is no "indeterminacy" when a law simply creates "clear questions of fact." *Id.*

The Court concludes that § 231(a)(3) is not impermissibly vague for three reasons.  First, as other courts have concluded, a person of ordinary intelligence would understand the conduct the statute prohibits.  *See United States v. Nordean*, 579 F. Supp. 3d 28, 57 (D.D.C. 2021); *United States v. Bingert*, 605 F. Supp. 3d 111, 128–30 (D.D.C. 2022).  Defendants cannot create confusion about the meaning of the statute by simply "lift[ing] . . . words out of context" and requiring them to stand on their own.  *United States v. Gossjankowski*, No. 21-cr-123, 2023 WL 130817, at *11–12 (D.D.C. Jan. 9, 2023); *see also United States v. Williams*, No. 21-cr-0618, 2022 WL 2237301, at *4 (D.D.C. June 22, 2022) (same).  Each of the phrases Defendants cite represents a puzzle piece that, when put together, creates a much clearer picture of the prohibited conduct.  A reasonable person would understand that the statute criminalizes interference with police and firefighter responses to a violent riot.  The terms are not "dependent on the subjective reaction of others, rather than the acts and intent of the defendant."  Defs.' Mot. Dismiss at 6.  The statute does not criminalize conduct that is "annoying," for instance, *Coates v. City of Cincinnati*, 402 U.S. 611, 612 (1971), nor does it rely on others' perceptions of whether the actions are "indecent," *Williams*, 553 U.S. at 306.  Instead, the phrases Defendants cite—for example, "to obstruct, impede, or interfere" or "incident to and during the commission of a civil disorder"—simply create "clear questions of fact" for the factfinder to resolve. *Id.*

Second, the statute's specific intent requirement "may mitigate [its] vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982); *see also Boyce Motor Lines v. United States*, 342 U.S. 337, 340 (1952) (concluding that it is not "unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line"); *Screws v. United States*, 325 U.S. 91, 102 (1945) ("[W]here the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law."). Defendants are incorrect that the statute lacks a mens rea requirement. *See* Defs.' Mot. Dismiss at 6. As the Government acknowledges, "Section 231(a)(3) requires *intent*, which narrows its scope." Gov't's Opp'n Mot. Dismiss at 10; *see also Bingert*, 605 F. Supp. 3d at 128–29 (citing *United States v. McHugh*, 583 F. Supp. 3d 1, 24–25 (D.D.C. 2022)). This intent requirement undermines Defendants' claim of vagueness because the Government must show that Defendants intended "to commit an[] act to obstruct, impede, or interfere with any fireman or law enforcement officer" on January 6. 18 U.S.C. § 231(a)(3).

Third, Defendants cannot make a facial challenge to the statute based on vagueness. Rather, courts "consider whether a statute is vague as applied to the particular facts at issue, for '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" *Holder v. Humanitarian L. Project*, 561 U.S. 1, 18–19 (2010) (quoting *Hoffman*, 455 U.S. at 495). Defendants' alleged activities "readily fall within the scope of the terms" of the statute. *Id.* at 21. The Government contends that Defendants "themselves charged over metal barriers and past law enforcement officers toward the Capitol" on the day of the riot. *Nordean*, 579 F. Supp. 3d at 57; *see also* Gov't's

Statement of Facts at 9–11.  The Government also asserts that Defendants confronted law enforcement officers on a staircase leading to the Lower West Terrace.  *Id.* at 14.  Defendants thus cannot complain that they lacked notice of the conduct the statute prohibits.

In reaching its conclusion that the statute is not impermissibly vague, the Court joins a series of others in this district that have held the same in the face of nearly identical challenges.  *See Nordean*, 579 F. Supp. 3d at 56–57; *McHugh*, 583 F. Supp. 3d at 24–28; *Bingert*, 605 F. Supp. 3d at 128–30; *Williams*, 2022 WL 2237301, at *3–5; *United States v. Gillespie*, No. 22-cr-60, 2022 WL 17262218, at *1–2 (D.D.C. Nov. 29, 2022); *United States v. Dennis*, No. 21-cr-679, 2022 WL 17475401, at *2 (D.D.C. Dec. 6, 2022); *Gossjankowski*, 2023 WL 130817, at *11–12; *United States v. Mock*, No. 21-cr-444, 2023 WL 3844604, at *5 (D.D.C. June 6, 2023).

### 2.  Interstate Commerce

Defendants next challenge the statute as exceeding Congress's powers under the Interstate Commerce Clause.  Defs.' Mot. Dismiss at 9–16.  Defendants argue that § 231(a)(3) regulates activities that do not substantially affect interstate commerce as required by *United States v. Lopez*, 514 U.S. 549 (1995).  *Id.* at 9–12.  Defendants also contend that the statute's jurisdictional element does not limit its reach to activities that substantially affect interstate commerce, that Congress did not find that the regulated activities substantially affect interstate commerce, and that the connection between the regulated activity and interstate commerce is too attenuated.  *Id.* at 12–16.  The Government responds that § 231(a)(3), as applied here, represents a valid exercise of Congress's power to regulate activities within the District of Columbia.  Gov't's Opp'n Mot. Dismiss at 11–15 (discussing Article I, Section 8, Clause 17 of the Constitution).  The Government additionally argues that the statute was properly enacted under the Commerce Clause and falls within all three *Lopez* categories.  *Id.* at 15–23.

The Commerce Clause grants Congress the "[p]ower . . . [t]o regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3.  In *Lopez*, the Supreme Court described "three broad categories of activity" that Congress may properly regulate under the Clause: (1) "the use of the channels of interstate commerce;" (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities;" and (3) "those activities having a substantial relation to interstate commerce, *i.e.*, those activities that substantially affect interstate commerce."  *Lopez*, 514 U.S. at 558–59 (internal citation omitted).  To determine whether an activity substantially affects interstate commerce under the third category, the Court established a four-factor test weighing "whether the regulated activity has anything 'to do with commerce or any sort of economic enterprise;'" "whether the statute in question contains an 'express jurisdictional element;'" "whether there are 'express congressional findings' or legislative history 'regarding the effects upon interstate commerce;'" and "whether the relationship between the regulated activity and interstate commerce is too attenuated to be regarded as substantial."  *Rancho Viejo, LLC v. Norton*, 323 F.3d 1062, 1068–69 (D.C. Cir. 2003) (quoting *Lopez*, 514 U.S. at 561–67).

A similar Commerce Clause challenge to § 231(a)(3) was evaluated and rejected in *United States v. Mostofsky*.  *See* 579 F. Supp. 3d 9, 15–21 (D.D.C. 2021).  The court there focused on the statute's jurisdictional element because "satisfying this prong is typically enough to satisfy the Commerce Clause."  *Id.* at 16.  The D.C. Circuit has held that inclusion of a jurisdictional element limiting the reach of a statute to circumstances affecting interstate commerce will pull a provision into the ambit of the Commerce Clause.  *Id.* at 17 (discussing *Fraternal Ord. of Police v. United States*, 173 F.3d 898, 907 (D.C. Cir. 1999)).  In *Fraternal Order of Police*, the D.C. Circuit concluded that the "in or affecting commerce" qualifier in 18

U.S.C. § 922(g)(9) meant the statute "fall[s] within Congress's authority."  173 F.3d at 907–08.

The language here, "obstructs, delays, or adversely affects commerce or the movement of any

article or commodity in commerce," has the same effect.  18 U.S.C § 231(a)(3).  The *Mostofsky*

court additionally rejected the defendant's argument that because the civil disorder—and not the

defendant's act of obstruction, impeding, or interference—must affect interstate commerce, the

jurisdictional clause does not actually limit the reach of the statute to activities that substantially

affect interstate commerce.  579 F. Supp. 3d at 17–18; *see also* Defs.' Mot Dismiss at 12–14.

The court reasoned that "when a person deliberately commits some act to obstruct, impede or

interfere with those officers who are attempting to quell an interference with interstate

commerce, that person is impacting interstate commerce."  *Mostofsky*, 579 F. Supp. 3d at 18

(cleaned up).  The Court finds this reasoning persuasive and adopts it here, concluding that

Congress properly enacted § 231(a)(3) under its Commerce Clause powers.[1]

The Court additionally considers whether Congress could enact § 231(a)(3) through its

plenary power over the District of Columbia.  "Not only may statutes of Congress of otherwise

nationwide application be applied to the District of Columbia, but Congress may also exercise all

the police and regulatory powers which a state legislature or municipal government would have

in legislating for state or local purposes."  *Palmore v. United States*, 411 U.S. 389, 397 (1973).

"The prohibition of riots is, of course, a central police power and is one of the oldest common

law and statutory crimes of Anglo-American law."  *United States v. Grider*, 617 F. Supp. 3d 42,

50 (D.D.C. 2022) (citing 4 William Blackstone, *Commentaries* *152, *152–53; James Pope,

---

[1] Although Defendants point out that Congress made no findings as to the regulated
activities' effects on interstate commerce, Defs.' Mot. Dismiss at 14–15, "Congress normally is
not required to make formal findings as to the substantial burdens that an activity has on
interstate commerce," *Lopez*, 514 U.S. at 562.

*Republican Moments: The Direct Role of Popular Power in the American Constitutional Order*, 139 U. Pa. L. Rev. 287, 333–35 (1990)).

The D.C. Circuit has rejected the notion that "a statute regulating conduct within the District of Columbia could exceed congressional authority under the Commerce Clause" given that "Congress has plenary authority in the District of Columbia." *United States v. Carson*, 455 F.3d 336, 368 (D.C. Cir. 2006).  In *Carson,* the court considered whether a provision of the Violent Crimes in Aid of Racketeering statute exceeded Congress's Commerce Clause powers. *Id.*  The court concluded that "[w]ithin the District, Congress did not need to rely on its Commerce Clause authority."  *Id.*  "Even if there were some doubt about [the statute's] constitutionality outside the District of Columbia, 'we need not find the language of [the statute] constitutional in all its possible applications in order to uphold its facial constitutionality.'"  *Id.* (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 104 (1971)); *see also United States v. Mahdi*, 598 F.3d 883, 896 (D.C. Cir. 2010) ("Our analysis in *Carson* remains both correct and controlling."). The circumstances of *Carson* are materially indistinguishable from those in this case: the Government applies a criminal statute of national applicability to activities within the District of Columbia, and Defendants challenge the statute's validity under the Commerce Clause. Applying *Carson*, the Court thus concludes that Congress properly enacted § 231(a)(3) under its plenary power to regulate the District of Columbia, and Defendants' challenge to the statute fails for that independent reason, as well.  *See Grider*, 617 F. Supp. 3d at 49–50 (holding the same).

### 3.  First Amendment

Defendants make two distinct First Amendment challenges to the validity of § 231(a)(3). First, they argue that the statute is overbroad because a substantial number of its applications are unconstitutional.  Defs.' Mot  Dismiss at 16–20.  Second, they assert that the law regulates the

content of speech and fails to survive strict scrutiny. *Id.* at 20–23. The Court addresses each of these arguments in turn.

### a. Overbreadth

Defendants contend that the statute is unconstitutional because "[u]nder the far-reaching terms of § 231(a)(3), 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Id.* at 19 (quoting *United States v. Stevens*, 559 U.S. 460, 473 (2010)). The Government responds that § 231(a)(3) applies to "acts," excludes obstruction unconnected to an officer's performance of her duties "incident to and during the commission of" a civil disorder, contains "objective metrics that differentiate a civil disorder from other events," and includes a mens rea requirement. Gov't Opp'n Mot. Dismiss at 25.

"[I]n a facial challenge to the overbreadth . . . of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *City of Houston v. Hill*, 482 U.S. 451, 458 (1987) (quoting *Hoffman*, 455 U.S. at 494). "[A] statute's overbreadth [must] be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292. "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003).

The Court agrees with many other judges in this district that have concluded "that this statute governs conduct, not speech," and is not overbroad. *Gossjankowski*, 2023 WL 130817, at *11–12; *see also Mostofsky*, 579 F. Supp. 3d at 22–24; *McHugh*, 583 F. Supp. 3d at 28–29; *Grider*, 617 F. Supp. 3d at 50–52; *Williams*, 2022 WL 2237301, at *6; *Gillespie*, 2022 WL 17262218, at *2–3; *Dennis*, 2022 WL 17475401, at *1–2; *Mock*, 2023 WL 3844604, at *5.

"Section 231(a)(3) criminalizes 'any *act* to obstruct, impede, or interfere with' law enforcement—not speech." *Gillespie*, 2022 WL 17262218, at *3.  It is not "addressed to speech or to conduct necessarily associated with speech," *Hicks*, 539 U.S. at 124, but rather to a certain manner of participating in a riot, *Grayned v. City of Rockford*, 408 U.S. 104, 116 (1972) ("[W]here demonstrations turn violent, they lose their protected quality as expression under the First Amendment.").  As another judge in this district has pointed out, the text of § 231 "is narrower than the crime of rioting itself at common law and under most state criminal codes." *Grider*, 617 F. Supp. 3d at 51.  "[I]f Defendant truly attempts a facial challenge to section 231, he is, in effect, asking the Court to vitiate centuries of criminal law across a swath of jurisdictions." *Id.*  When comparing its legitimate applications to those that implicate constitutionally protected activity, "[m]any more potential applications would fall within the 'statute's plainly legitimate sweep.'" *Mostofsky*, 579 F. Supp. 3d at 23.  The Court thus concludes that the statute is not overbroad.[2]

### b. Content-Based Regulation of Speech

Defendants next argue that § 231(a)(3) is a viewpoint-based regulation of speech and fails to survive strict scrutiny.  Defs.' Mot. Dismiss at 20–23.  According to Defendants, the law "singles out forms of expression that contain messages that criticize, challenge, insult, or object to the actions of law enforcement officers." *Id.* at 22.  The Government responds that "a determination that a statue is not overbroad forecloses an argument that it is facially unconstitutional," and that the statute "does not make distinctions based upon content."  Gov't Opp'n Mot. Dismiss at 26–27.

---

[2] Defendants do not make an as-applied challenge to the statute.  *See generally* Defs.' Mot. Dismiss.

A speech regulation is content-based if it "targets speech based on its communicative content—that is, if it applies to particular speech because of the topic discussed or the idea or message expressed," but not if it is "agnostic as to content." *City of Austin v. Reagan Nat'l Advert. of Austin*, 596 U.S. 61, 69 (2022) (cleaned up).  To determine whether a regulation is a content-based restriction of speech, a court first considers whether the regulation, "'on its face[,]' draws distinctions based on the message a speaker conveys." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (citation omitted).  A court must next ask whether "the law's justification or purpose" is similarly content-neutral. *Id.* at 166.

As explained above, § 231(a)(3) is directed at conduct, not speech, but insofar as the targeted conduct entails protected expressive activity, the statute's restrictions are agnostic as to content.  Contrary to Defendants' contentions, § 231(a)(3) does not distinguish between acts that are critical of, neutral to, or in favor of law enforcement. *See United States v. Pugh*, 90 F.4th 1318, 1332 (11th Cir. 2024).  The law is thus content-neutral on its face.  Defendants additionally argue that the statute was "[a]uthored by segregationist legislators in direct response to the civil rights movement," Defs.' Mot. Dismiss at 2, but provide no citations to caselaw, no legislative history, and no further explanation of their position.  Defendants must do much more than this to show that Congress enacted the Anti-Riot Act—which it passed alongside the Civil Rights Act of 1968—with the purpose of targeting rioters based on their viewpoints. *See* Anti-Riot Act, Pub. L. No. 90-284, 82 Stat. 73 (1968); *see also United States v. Wood*, No. 20-cr-56 MN, 2021 WL 3048448, at *8 (D. Del. July 20, 2021) (rejecting a similar argument based on legislative history); *United States v. Howard*, No. 21-cr-28-PP, 2021 WL 3856290, at *12 (E.D. Wis. Aug. 30, 2021) (same).  The Court thus concludes, as several other courts have done, that the statute does not impose content-based restrictions on speech. *See, e.g.*, *Pugh*, 90 F.4th at

1332; *United States v. Phomma*, 561 F. Supp. 3d 1059, 1069 (D. Or. 2021); *Wood*, 2021 WL

3048448, at *8; *Howard*, 2021 WL 3856290, at *12.[3]

### 4.  Sufficiency of Indictment

Finally, Defendants posit that Count One of the indictment should be dismissed because

it "fails to fulfill either the notice or presentment requirements of the Fifth and Sixth

Amendments."  Defs.' Mot. Dismiss at 25.  The Government argues that the language complies

with constitutional requirements and "provides adequate notice" to Defendants.  Gov't's Opp'n

Mot. Dismiss at 30.

Under the Federal Rules of Criminal Procedure, an indictment need only contain a "plain,

concise, and definite written statement of the essential facts constituting the offense charged."

Fed. R. Crim. P. 7(c)(1).  "[D]etailed allegations . . . surely are not contemplated by Rule

7(c)(1)."  *United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007).  "It is generally sufficient

that an indictment set forth the offense in the words of the statute itself, as long as 'those words

of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all

the elements necessary to constitute the offence intended to be punished.'"  *Hamling v. United

States*, 418 U.S. 87, 117 (1974) (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)).

The indictment here clearly sets out the nature of the offense, the location of the offense,

and the date on which the offense occurred.  *See* Indictment at 1–2.  It does so "in the words of

the statute itself."  *Id.*  The indictment thus provides Defendants with constitutionally sufficient

notice and protects them against subsequent prosecution for the same offense.  The Court

accordingly agrees with several others in this district that have rejected challenges to indictments

---

[3] Because the Court concludes that the statute does not regulate the content of speech, it need not consider Defendants' argument that the statute falls to strict scrutiny.  *See* Defs.' Mot. Dismiss at 22–23.

with identical language.  *See United States v. Sargent*, No. 21-cr-258, 2022 WL 1124817, at *3–6 (D.D.C. Apr. 14, 2022); *United States v. Warnagiris*, No. 21-cr-382, 2023 WL 6926491, at *5 (D.D.C. Oct. 19, 2023); *Gossjankowski*, 2023 WL 130817, at *13; *Dennis*, 2022 WL 17475401, at *3; *see also Phomma*, 561 F. Supp. 3d at 1070–71.

## B.  Defendants' Motion in Limine

Defendants additionally filed a motion in limine asking the Court to instruct the Government against the use of "inflammatory rhetoric or labels" during trial.  Defs.' Mot. Limine at 1.  Defendants argue that such language is "inappropriate in the context of a criminal trial" and that "[t]he Brays are not accused of overthrowing or attacking the United States government."  *Id.* at 2.  The Government argues that the relevant "terms and phrases fairly describe the riot that took place on January 6th and the rioters' objectives—all of which the government will seek to prove at trial."  Gov't Opp'n Defs.' Mot. Limine  at 4, ECF No. 43.

Again, Rule 403 "has a highly limited application, if any at all," in a bench trial. *Paleteria La Michoacana*, 2015 WL 13680822, at *1.  In addition, Rule 403 "does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone."  *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998); *Old Chief v. United States*, 519 U.S. 172, 187 (1997) (emphasizing the importance of a party's discretion to tell a "colorful story with descriptive richness").  However, "the use of insults or slurs in lawyers' arguments" is inappropriate, though insulting language may be permissible if "tied to specific conduct at issue in the trial."  *Gartmon*, 146 F.3d at 1024.  That is, insulting language may not be "used as a generalized attack on [a defendant's] character," but may be used "as a description of the manner in which he" performed the offense conduct.  *Id.*

This Court has granted in part a similar motion in limine during a case arising out of January 6. *See United States v. Rhine*, No. 21-cr-687, 2023 WL 2072450, at *8 (D.D.C. Feb. 17, 2023) (quoting *Gartmon*, 146 F.3d at 1024). The Court reasoned that "it would be exceedingly difficult to accurately characterize the events of January 6 in a way that would reveal" use of the terms "riot" or "mob" "to be overstatement." *Id.* In contrast, the terms "insurrection" and "insurrectionist" imply an intent to "revolt[] against civil authority or an established government" that "separates them from generic terms like 'riot' or 'mob.'" *Id.* The former terms "also may tend to connect Defendant[s] to other January 6 defendants charged with seditious conspiracy, a charge that Defendant[s], like the vast majority of other January 6 defendants, do[] not face." *Id.* For the same reasons, the Court will give a similar instruction here: "the Government may not argue or elicit testimony that Defendant[s] participated in an 'insurrection' or [are] 'insurrectionist[s]' absent a specific showing, [at the bench,] that use of those terms is 'an accurate description' that is 'tied to specific conduct at issue in the trial.'"[4] *Id.*

### C.  Government's Motions in Limine

The Court next considers each of the Government's motions in limine concerning the locations of USCP surveillance cameras; evidence and arguments regarding law actions by law enforcement on January 6; and cross examination of USSS witnesses.

#### 1.  USCP Surveillance Cameras

The Government states that it plans to introduce video evidence from USCP surveillance cameras at trial but asks the Court to prohibit "the defense from probing, during cross-

---

[4] The Court notes that accidental use of "insurrection," "insurrectionist," or "trespass" will not necessarily be grounds for a mistrial. *See United States v. McLendon*, 378 F.3d 1109, 1112 (D.C. Cir. 2004) ("The single most important consideration in ruling on a motion for a mistrial is the extent to which the defendant was unfairly prejudiced."). This is especially true in the context of a bench trial.

examination, the exact locations of Capitol Police surveillance cameras or from using the maps, which show each camera's physical location, as an exhibit at trial." Gov't's Surveillance Camera Mot. Limine at 2, ECF No. 39. The Government asserts that under Rule 403, "[b]roader presentation of evidence about camera locations could compromise national security without adding any appreciable benefit to the determination of the truth, or the veracity or bias of witnesses." *Id.* at 4. Defendants nominally oppose the motion but state that they have "no intention of presenting the camera map at trial or questioning witnesses about the precise location of the surveillance cameras." Defs.' Opp'n Gov't's Mot. Limine at 1, ECF No. 42. Defendants offer the Court no further theory of this information's relevance, but state that they "cannot foreclose the possibility that it will become relevant on cross-examination." *Id.* at 2. As another court in this district held, "[i]n any given video, defendant either is or is not visible, and the framing of the camera image should make generally clear the boundaries of the camera's field of view, without requiring further details as to the camera's exact position, aiming, characteristics, and appearance." Min. Order, *United States v. Williams*, No. 21-cr-377 (D.D.C. June 8, 2022).

The Court finds evidence of the precise locations of Capitol surveillance cameras, including maps showing those locations, irrelevant under Rule 401 and therefore presumptively inadmissible. However, to the extent either Defendant develops evidence to show that such location information is relevant and necessary to his defense at trial, he may raise the issue at the bench. And as the Government acknowledges, the Court's ruling does not prevent Defendants from "prob[ing] what Capitol Police's cameras show and do not show by asking about the general location of each camera." Gov't's Surveillance Camera Mot. Limine at 4.

2.  Estoppel and Law Enforcement Inaction Evidence

The Government seeks a court order prohibiting Defendants from introducing evidence or arguing any of the following:

> (1) any entrapment by estoppel defense related to law enforcement; (2) any claim that by allegedly failing to act, law enforcement made the defendants' entry into the United States Capitol building or grounds or their conduct therein lawful; and (3) any alleged inaction by law enforcement unless the defendants specifically observed or was otherwise aware of such conduct at the time of the crime.

Gov't's Law Estoppel Mot. Limine at 1, ECF No. 40.  Defendants assert that they "do not intend to claim entrapment by estoppel nor do they intend to argue that law enforcement gave them lawful authority to enter and remain in the building."  Defs.' Opp'n Gov't's Mot. Limine at 2.  Because Defendants disavow any intent to rely on the entrapment by estoppel defense or other arguments that inaction by law enforcement by default rendered Defendants' conduct legal, the Court denies the Government's motion as moot as to the first two issues.

Defendants nonetheless seek to "reserve the right to introduce evidence as to their intent," as knowledge represents an essential element of several of the crimes with which the Government charges them.  *Id.*  The Court does not interpret the Government to ask to exclude evidence of Defendants' mental states, including—as Defendants put it—evidence tending to show "whether they knew they did not have lawful authority to enter and whether they specifically intended to disrupt government business."  *Id.*  The factfinder must resolve these questions of fact in its consideration of charges brought under 18 U.S.C. § 1752, and Defendants may thus introduce or rebut evidence of their own mental states.  As the Government points out, however, "any action or inaction" on the part of law enforcement "of which defendant[s] [were] not aware cannot possibly have had any effect on [their] state of mind and is inadmissible as irrelevant under Federal Rule of Evidence 401."  *United States v. Oliveras*, No. 21-cr-738, 2023 WL 196525, at *2 (D.D.C. Jan. 17, 2023); *accord Rhine*, 2023 WL 2072450, at *10.  The Court

therefore holds that evidence of law enforcement inaction or removal of barriers is relevant and admissible only to the extent that the particular Defendant was aware of it or reasonably could have perceived it, or that it occurred in close proximity to the locations where the Defendant is alleged to have entered or been in the Capitol before he was there such that it reasonably bears on whether the area was restricted, as established through presentation of evidence or by proffer to the Court. *See Rhine*, 2023 WL 2072450, at *10.

### 3. Cross Examination of USSS Witnesses

The Government plans to call a witness from the USSS to testify regarding the agency's duties on January 6, but it asks the Court to prohibit Defendants from questioning USSS witnesses about (1) "Secret Service protocols related to the locations where protectees or their motorcades are taken at the Capitol or other government buildings when emergencies occur;" and (2) "[d]etails about the nature of Secret Service protective details, such as the number and type of agents the Secret Service assigns to protectees." Gov't's USSS Mot. Limine at 2. The Government asserts that these details are not relevant to the case. *Id.* at 4–5. Defendants state that they "do not anticipate questions of this nature" but "will advise the Court if such questions become relevant based on the prosecution's presentation of evidence." Defs.' Opp'n Gov't's Mot. Limine at 2.

Based on the limited daylight, if any, between the parties on these issues at present, the Court denies the Government's motion for a pretrial order on this subject. The Court instructs Defense counsel to seek leave, at the bench, before asking any questions that approach the sensitive areas identified by the Government. The Court will rule on any objections to specific questions at trial. *See Barnes*, 924 F. Supp. 2d at 79 ("[I]n some instances it is best to defer rulings until trial, [when] decisions can be better informed by the context, foundation, and

relevance of the contested evidence within the framework of the trial as a whole." (citation omitted)).

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Count One is **DENIED**; and it is

**FURTHER ORDERED** that Defendants' Motion in Limine is **GRANTED IN PART AND DENIED IN PART;** and it is

**FURTHER ORDERED** that the Government's Motions in Limine are **GRANTED IN PART AND DENIED IN PART**.

An order consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated:  August 8, 2024                                    RUDOLPH CONTRERAS
                                                         United States District Judge

21